**COLORADO COMPENSATION INSURANCE AUTHORITY,**
Petitioner,

v.

**Dominick A. NOFIO and The Industrial Claim Appeals Office, Respondents.**

**No. 93SC535.**

Supreme Court of Colorado,
En Banc.

Dec. 19, 1994.

Colorado Compensation Ins. Authority, Michael J. Steiner, Carolyn A. Boyd, Denver, for petitioner.

Dawes and Harriss, P.C., Robert C. Dawes, Durango, for respondent Dominick A. Nofio.

No appearance for Industrial Claim Appeals Office.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *Nofio v. Colorado Compensation Insurance Authority,* No. 92CA1441 (Colo.App. July 15, 1993) (not selected for publication). The primary issue we accepted for review on certiorari is:

> Whether a claimant in a workers' compensation matter is entitled to a de novo hearing pursuant to section 8–43–207, 3B C.R.S. (1994 Supp.), after medical utilization review under section 8–43–501, 3B C.R.S. (1994 Supp.), results in an order changing his health care provider and in retroactive denial of payments for medical services rendered.

Our answer is no. We granted certiorari on an additional issue which we need not address.[1] We do not address the due process claims raised in the second issue because we find that the petitioner lacks a protected property interest in receiving medical care from a particular provider or in receiving a certain type of treatment. Accordingly, we reverse and remand to the court of appeals with directions to approve the order entered by the Industrial Claim Appeals Panel.

I

Dominick A. Nofio (Nofio) suffered a work-related accident on October 5, 1982, injuring his neck and upper back. After being referred to two pain clinics, Nofio was referred to Dr. James Fuller in 1983, and then to chiropractor William L. Walker, D.C., in March 1985. Under Walker's supervision, Nofio received palliative care including chiropractic and massage therapy treatments.

In an order dated April 5, 1986, the Division of Labor found Nofio to be permanently and totally disabled due to chronic pain. Scott Anderson, D.C., provided Nofio's chiropractic treatments beginning in September, 1987. From March 1985 until February 1991, Nofio received approximately 1,000 chiropractic treatments.

---

1. The second issue is:
   Whether section 8–43–501, 3B C.R.S. (1994 Supp.), violates the Due Process Clauses of the United States and Colorado Constitutions be- cause it does not provide for a hearing before or after an order to change a claimant's health care provider or to retroactively deny payments for past medical services rendered.

On March 4, 1991, pursuant to the Medical Utilization Review statute, section 8–43–501, 3B C.R.S. (1990 Supp.)[2] (M–U–R statute), the Colorado Compensation Insurance Authority (CCIA) requested a utilization review of Nofio's medical treatment and the Director of the Division of Workers' Compensation (Director) appointed a utilization review committee (review committee). The review committee consisted of two medical doctors and one chiropractor. The two medical doctors concluded that chiropractic care should have been concluded within three to six months of the injury, and recommended a change of physician and a retroactive denial of payments from 1986. By an order dated October 1, 1991, the Director adopted the majority recommendation of the review committee to change medical providers and retroactively deny payment after January 1, 1990.

Nofio sought review of the Director's order by an Administrative Law Judge (ALJ). On February 19, 1992, the ALJ, after reviewing the recommendation of the review committee, affirmed the change of physician, finding that the recommendation was based on substantial evidence. The ALJ modified the order, limiting the retroactive denial of benefits to charges for brief examinations only.

On March 6, 1992, Nofio filed a petition to review the ALJ's order with the Industrial Claim Appeals Panel (Panel). The Panel entered its final order on August 17, 1992, finding that Nofio lacked standing to contest the retroactive denial of benefits.[3] Ch. 225, sec. 1, § 8–43–501(5)(d), 1991 Colo.Sess.Laws 1357–58. The Panel affirmed the ALJ's or-

der changing physicians and ruled that the findings and conclusions of the ALJ were supported by substantial evidence.

Nofio filed a notice of appeal to the court of appeals on August 31, 1992. On July 15, 1993, the court of appeals held that the Director's order terminated care of Nofio by a previously authorized provider and that he was therefore entitled to a de novo hearing. After the court of appeals denied the CCIA's petition for rehearing, we granted certiorari.

## II

■ A person claiming benefits under workers' compensation is entitled to such medical benefits as are reasonably necessary to relieve the claimant from the effects of a work-related injury or illness. *Grover v. Industrial Comm'n,* 759 P.2d 705, 709 (Colo. 1988); *Hargett v. Director, Div. of Labor,* 854 P.2d 1316, 1319 (Colo.App.1992). Pursuant to section 8–42–101, 3B C.R.S. (1994 Supp.), a claimant under the Workers' Compensation Act is entitled to medical treatment and supplies "as may reasonably be needed at the time of the injury or occupational disease and thereafter during the disability to cure and relieve the employee from the effects of the injury."

■ The Colorado General Assembly passed the M–U–R statute in 1988 to provide a method to review and remedy medical services which may not be reasonably necessary or reasonably appropriate in light of accepted professional standards. Ch. 49, sec. 3, § 8–49–102, 1988 Colo.Sess.Laws 375.[4] Under

---

**2.** Section 8–43–501(2)(a), 3B C.R.S. (1990 Supp.), states that "[a]ny insurer, self-insured employer, or claimant may request review under the provisions of this section of services rendered pursuant to this article by a health care provider."

Section 8–43–501(3)(a), 3B C.R.S. (1990 Supp.), provides in relevant part:
The director shall appoint members of utilization review committees for purposes of this section. The director shall establish committees based on the different areas of health care practice for which requests for utilization review may be made. The director, by rule and regulation, shall establish the qualifications for members of the different committees and the areas of health care practice in which each

such committee shall conduct requested utilization reviews.

**3.** The Panel cited the 1991 addition of subsection 5(d) to the statute, which read:
If the director issued an order specifying that the payment of fees in a case be retroactively denied, the health care provider may request a de novo hearing before an administrative law judge by filing an application for hearing within thirty days after the date of the certificate of mailing of the order.
Ch. 225, sec. 1, § 8–43–501(5)(d), 1991 Colo. Sess.Laws 1357–58.

**4.** The purpose of the medical utilization review process is stated in § 8–43–501(1):
The general assembly hereby finds and determines that insurers and self-insured employers

the M–U–R statute, the Division of Labor addresses requests for review filed by claimants, insurers, and self-insured employers. Pursuant to the statute, the Director appoints a utilization review committee of three physicians who independently review the medical necessity and appropriateness of the care provided. By a majority vote, the review committee recommends to the Director whether or not a change in health care providers is appropriate. The review committee, in its discretion, may also recommend a retroactive denial of fees.

*Hargett v. Director, Division of Labor,* 854 P.2d 1316 (Colo.App.1992), was the first case to interpret the M–U–R statute. The M–U–R statute in effect when *Hargett* was decided allowed a party to request a hearing at which the review committee's report would be "admissible in evidence," but also provided that "if the report of the utilization review committee upon which the director based his order in the case under this section is supported by substantial evidence, the director's order shall not be altered by the administrative law judge." § 8–49–102(56)(b)(III), 3B C.R.S. (1988) (repealed 1990). The court identified the inherent ambiguity in the statute, stating that: "While the phrase 'admissible in evidence' suggests an evidentiary, or de novo, hearing, the statute does not grant the ALJ any fact-finding authority; instead

the statute imposes an appellate standard of review and restricts the ALJ to determining whether the Director's order is supported by substantial evidence." *Hargett,* 854 P.2d at 1320.

The court of appeals resolved the ambiguity by creating two separate review routes. Review under the M–U–R statute was limited to a review of the record to determine whether substantial evidence supported the Director's order. An evidentiary hearing under the general hearing provision was authorized only "if the Director's order has terminated a particular type of benefits, *e.g.,* chiropractic care, or if a party seeks to terminate medical benefits based on the review proceedings...." *Id.*[5]

The court of appeals in this case relied upon the *Hargett* decision in finding that a de novo hearing was the appropriate remedy. *Nofio v. Colorado Compensation Ins. Auth.,* No. 92CA1441 (Colo.App. July 15, 1993). The court stated:

In *Hargett v. Director, Division of Labor* ... this court ruled that a party adversely affected by a termination of previously authorized health care under § 8–43–501 can request that the matter be litigated *de novo* in an adversarial hearing pursuant to the regular hearing process under § 8–43–

---

should be required to pay for all medical services pursuant to this article which may be reasonably needed at the time of an injury or occupational disease to cure and relieve an employee from the effects of an on-the-job injury. However, insurers and self-insured employers should not be liable to pay for care unrelated to a compensable injury or services which are not reasonably necessary or not reasonably appropriate according to accepted professional standards. *The general assembly, therefore, hereby declares that the purpose of the utilization review process authorized in this section is to provide a mechanism to review and remedy services rendered pursuant to this article which may not be reasonably necessary or reasonably appropriate according to accepted professional standards.*

§ 8–43–501, 3B C.R.S. (1994 Supp.) (emphasis added).

**5.** The court also stated that:

"[W]e recognize that a change in health care provider may well result in the termination of a particular *type* of health care treatment....

Or, the committee may conclude that a change in a health care provider within the same specialty is appropriate.... [I]n such circumstances, we believe the remedy for the affected party is to request an evidentiary hearing under the hearing and review provisions of the Act."

*Hargett,* 854 P.2d at 1319.

The appropriate hearing and review provisions, now codified at § 8–43–207, state that: "Hearings shall be held to determine any controversy concerning any issue arising under articles 40 to 47 of this title." § 8–43–207(1), 3B C.R.S. (1994 Supp.). *See Donn v. Industrial Claim Appeals Office,* 865 P.2d 873, 876 (Colo.App.1993) ("[A] party adversely affected by a termination of previously authorized health care under § 8–43–501 can request that the matter be litigated *de novo* in an adversarial hearing pursuant to the regular hearing process under § 8–43–207...."); *see also McWhorter v. CNA Ins. Co.,* 868 P.2d 1128, 1130 (Colo.App.1993) ("Inasmuch as claimant requested an evidentiary hearing at the time he appealed the Director's order, his request for hearing should be treated as a request for hearing under § 8–43–207.").

207.... Because the Director's order in this case ordered a termination of the claimant's care by a previously authorized provider, claimant is entitled to have the matter adjudicated *de novo* in an adversarial hearing before an ALJ.

*Nofio,* slip op. at 2.

■■■ In *Nofio,* the court of appeals gave undue breadth to the Director's order and, therefore, exceeded the holding of *Hargett.* The order of the Director cannot require a termination of care, because the M–U–R statute authorizes neither the termination nor the recommendation of termination of medical treatment. Section 8–43–501(3)(c), 3B C.R.S. (1990 Supp.), provides the only options available to the review committee:

(c) ... Each committee shall issue a report to the director on the findings for each case reviewed. For each case, a committee may recommend by a majority vote of such committee that no change be ordered with respect to a case or that a change of provider be ordered. A committee, by a unanimous vote, may recommend that the director order that payment for fees charged for services in the case be retroactively denied.[6]

Once the review committee issues a recommendation, section 8–43–501(3)(c) mandates that: "The director shall accept the recommendation of a committee and base the order entered pursuant to this section thereon." Therefore, the Director must defer to the recommendation of the committee, a recommendation which cannot suggest a termination of care. § 8–43–501(3)(c).

■■■ Nor is there evidence that the *effect* of the Director's order is to terminate Nofio's care. Following the recommendation of the review committee, the Director ordered a change of provider. The M–U–R statute sets forth the procedure to be followed once a change of provider is ordered:

If the director orders pursuant to subsection (3) of this section that a change of provider be made ... the claimant ... shall have seven days from receipt of the director's order in which to agree upon a level I provider. If the claimant ... cannot reach agreement within the seven day time period, the director shall select three providers. A new provider shall be chosen from the three providers so selected by the party who was successful in the request for review. If no appeal is filed, the successful party shall notify the division of the name of the new provider within seven days of the selection of the three potential providers. If the new health care provider is not selected within such seven days, the director shall select the provider.

§ 8–43–501(4), 3B C.R.S. (1994 Supp.). Such a procedure ensures that care is not terminated and that a new provider is chosen, either by the claimant or the Director. The mere possibility that Nofio's benefits may be terminated at a later date does not entitle him to a de novo hearing. Nofio will be entitled to such a hearing under section 8–43–207 when his receipt of benefits is threatened, not his receipt of services from a particular chiropractor or his receipt of a particular type of treatment.

No provision in the M–U–R statute specifically authorizes a claimant to receive a de novo hearing before an ALJ.[7] The court of appeals in *Hargett* provided for such a hearing only if benefits or a type of benefits were terminated, a recommendation beyond the reach of the M–U–R statute. Cases relying on *Hargett,* as well as the case before this

---

6. By ordering a "change of provider," the Director complied with the statutory requirements. The Director also followed the statute by adopting the unanimous recommendation of the committee that fees be retroactively denied.

7. At the time of review, only two provisions in the M–U–R statute referred to hearings for claimants. *See* § 8–43–501(5)(a), 3B C.R.S. (1990 Supp.) (allowing a dissatisfied claimant, insurer, or self-insured employer to "appeal an order specifying that ... a change of provider be made ... by requesting a hearing pursuant to this article."); § 8–43–501(5)(b)(III), 3B C.R.S. (1990 Supp.) (providing the appropriate review standard when "a claimant, insurer, or self-insured employer appeals an order ... by requesting a hearing before an administrative law judge according to the provisions of this article"). The court of appeals in *McWhorter v. CNA Ins. Co.,* 868 P.2d 1128 (Colo.App.1993), ruled that the deletion of references to hearings did not alter the *Hargett* analysis and still entitled claimants to a hearing under § 8–43–207 if benefits were terminated.

court, have exceeded the procedural remedies intended for workers' compensation claimants. *McWhorter v. CNA Ins. Co.*, 868 P.2d 1128 (Colo.App.1993); *Donn v. Industrial Claim Appeals Office*, 865 P.2d 873 (Colo.App.1993); *see also Williams v. Industrial Claim Appeals Office*, 862 P.2d 1007 (Colo.App.1993) (addressing the preclusive effect of an M–U–R proceeding for collateral estoppel purposes); *Mason Jar Restaurant v. Industrial Claim Appeals Office*, 862 P.2d 1026 (Colo.App.1993) (same). Under these cases, an evidentiary hearing would be authorized for any change of health care provider, since all changes of providers have the effect of terminating a previously authorized provider. Because Nofio has failed to prove a termination rather than merely a change of benefits, we reverse the court of appeals ruling entitling Nofio to a de novo hearing.

## III

▆▆▆ A claimant who has been awarded benefits in a workers' compensation case is entitled to procedural due process before those benefits may be terminated. *Hargett*, 854 P.2d at 1319; *see Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[8] In order to claim a deprivation of due process, Nofio must establish that he has a property right either in receiving treatment from a specific medical provider or in receiving a specific type of treatment. We hold that neither interest exists.

▆▆▆ The determination of the existence of a property interest is a question of state law:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Nofio possesses a property interest in receiving treatment and supplies which "may reasonably be needed at the time of the injury or occupational disease and thereafter during the disability to cure and relieve the employee from the effects of the injury." § 8–42–101(1)(a), 3B C.R.S. (1994 Supp.). Neither the Workers' Compensation Act nor any other state law, however, grants Nofio the right to receive medical care from a particular medical provider or to receive a particular type of treatment.[9] In fact, Nofio has not specifically alleged any "legitimate claim of entitlement." The mere existence of a procedure to determine whether a provider's treatment is medically necessary does not expand Nofio's substantive rights. In *Ficarra v. Department of Regulatory Agencies*, 849 P.2d 6, 20 (Colo.1993), we held that:

Th[e] right to a hearing, however, is statutorily based, and the fact that the General Assembly has created a right to such a hearing does not mean that the plaintiffs are independently entitled to it as a matter of constitutional law. In order to establish that they have a property interest in the renewal of their licenses that is entitled to the protections of procedural due process, the plaintiffs would have to show that they

**8.** *See also Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974) ("The Court has consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interests."); Henry J. Friendly, *Some Kind of Hearing*, 123 U.Pa.L.Rev. 1267 (1975).

We disapprove of *Hargett* insofar as that case would authorize a de novo hearing for a claimant when a *type* of treatment is terminated. We hold that a claimant possesses a property interest in receiving workers' compensation benefits. We find no such "legitimate claim of entitlement,"

however, in a claimant's interest in receiving (1) treatment from a particular provider or (2) a particular type of treatment.

**9.** Section 8–43–404(5)(a), 3B C.R.S. (1993 Supp.), states that "[i]n all cases of injury, the employer or insurer has the right in the first instance to select the physician who attends said injured employee." Although claimants may request that a change of physician be ordered, such a change may be ordered only "upon a proper showing." *Id.* No other provision grants claimants the right to select their medical provider.

had a legitimate claim of entitlement in the renewal of their licenses....

Nofio has not alleged a specific entitlement nor does any statutory basis exist to find such an entitlement.

## IV

We hold that Nofio is not entitled to a de novo hearing pursuant to section 8–43–207 because his benefits have been changed, not terminated. Section 8–43–501 does not violate Nofio's right to due process because he has no protected property interest in receiving care from a specific health care provider or in receiving a particular type of treatment.

Accordingly, we reverse and remand to the court of appeals with directions to approve the order entered by the Industrial Claim Appeals Panel.

LOHR, J., dissents.

KIRSHBAUM and VOLLACK, JJ., join in the dissent.

Justice LOHR dissenting:

This case involves an October 1, 1991, order by the Director of the Division of Workers' Compensation (Director), entered pursuant to the Medical Utilization Review (M–U–R) statute, § 8–43–501, 3B C.R.S. (1990 Supp.),[10] requiring the claimant, Dominick A. Nofio (Nofio), to change his medical provider and retroactively denying payment for treatment after January 1, 1990. Upon judicial review, however, the Colorado Court of Appeals held that Nofio is entitled to a de novo hearing under section 8–43–207, 3B C.R.S. (1994 Supp.), and remanded the case in order for that hearing to take place. The majority reverses the court of appeals and holds that Nofio failed to prove a termination of benefits, rather than merely a change in benefits, and thus is not entitled to a de novo hearing. Maj. op. at 11. I respectfully disagree. I would hold that unless the Director's order clearly authorizes only a change of providers within the same discipline as the current provider, i.e., chiropractic care, the claimant is entitled to a de novo hearing. I would,

therefore, affirm the holding of the court of appeals that the case be remanded with directions to conduct such a hearing. *Nofio v. Colorado Compensation Ins. Auth.*, No. 92CA1441 (Colo.App. July 15, 1993) (not selected for official publication).

## I.

On October 5, 1982, Nofio injured his neck and upper back in a work related accident. In an order dated December 2, 1986, the Division of Labor found that after receiving extensive medical treatment, including palliative care, Nofio was permanently and totally disabled due to chronic pain. The Colorado Compensation Insurance Authority (CCIA) subsequently refused to pay for Nofio's massage therapy treatments, leaving a chiropractor, Dr. Walker, D.C., as Nofio's sole care provider. In September 1987, Dr. Walker left the area and a second chiropractor, Dr. Scott Anderson, D.C., continued to treat Nofio.

On March 4, 1991, the CCIA commenced this Medical Utilization Review. The Director appointed a review committee (Committee) that consisted of two medical doctors—Howard Shoemaker, M.D., and John P. Smith, M.D.—and one chiropractor—Jeffrey B. Prystrupa, D.C. Each Committee member submitted a recommendation based on Nofio's medical records contained in his workers' compensation claim file, a review of medical records made by a non-treating chiropractor, and a report submitted by Nofio's sole care provider—Dr. Anderson. Both medical doctors on the Committee recommended a change in health care provider and concluded that chiropractic care was no longer beneficial. Both medical doctors also recommended a retroactive denial of payments from 1986. Dr. Prystrupa, the chiropractor on the Committee, recommended that some chiropractic treatment continue, but also recommended that surgical intervention and psychological treatment be explored. Dr. Prystrupa recommended a retroactive denial of payments for "brief exams" from 1986, but

---

**10.** § 8–43–501 has been subsequently repealed and reenacted and otherwise amended. *See* § 8– 43–501, 3B C.R.S. (1994 Supp.).

suggested that a "settlement" should be considered regarding monthly payments for treatment.

In an order dated October 1, 1991, the Director adopted the majority's recommendation and ordered that a "change of provider be made" and retroactively denied payment for medical services rendered after January 1, 1990. Nofio applied for a review of this order by an Administrative Law Judge (ALJ). In an order dated February 19, 1992, the ALJ affirmed the Director's order that a change of provider be made on the basis that it was supported by substantial evidence in the record. The ALJ, however, modified the retroactive denial of payments to begin June 20, 1986, rather than January 1, 1990. On March 6, 1992, Nofio filed a petition with the Industrial Claim Appeals Panel (ICAP) to review the ALJ's order. In its final order, dated August 17, 1992, the ICAP found that Nofio lacked standing to contest the retroactive denial of benefits paid to the providers and thus affirmed the denial of benefits. The ICAP correctly acknowledged that it lacked jurisdiction to address Nofio's due process challenge. Lastly, the ICAP concluded that the ALJ's order was supported by substantial evidence and affirmed the ALJ's order.

Nofio appealed to the Colorado Court of Appeals. The court of appeals held in an unpublished opinion that "[b]ecause the Director's order in this case ordered a termination of the claimant's care by a previously authorized provider, claimant is entitled to have the matter adjudicated *de novo* in an adversarial hearing before an ALJ." *Nofio,* slip op. at 2. The court of appeals rejected Nofio's contention that the M–U–R statute should be invalidated because it does not require the Committee to base its recommendation on the standard of care applicable in the particular field of practice in which the health care provider is engaged. *Id.* The court of appeals further rejected the remaining issues raised by Nofio. *Id.* at 3–4.

We granted certiorari to consider whether a workers' compensation claimant is entitled

to a *de novo* hearing pursuant to section 8–43–207 after a medical utilization review under section 8–43–501 results in an order changing the claimant's health care provider and retroactively denying payments for medical services rendered.[11] Based on the statutory language and Colorado case law, I would hold that any order by the Director that mandates a change in the type of health care provider treating the claimant—without expressly limiting the new provider to the same discipline as the current provider, *e.g.,* chiropractor—terminates that discipline's method of treatment and is therefore subject to a *de novo* hearing under section 8–43–207.

## II.

I agree with the majority that a workers' compensation claimant is entitled to such medical benefits as are reasonably necessary to relieve the claimant from the effects of a work-related injury or illness. *E.g., Grover v. Industrial Comm'n,* 759 P.2d 705, 709 (Colo.1988). I also agree with the majority that the General Assembly passed the M–U–R statute in 1988 in order to review and remedy medical services that may not be reasonably necessary or reasonably appropriate in light of accepted professional standards. Ch. 49, sec. 3, § 8–49–102, 1988 Colo. Sess.Laws 374, 375. I disagree, however, with the majority's conclusion that the Director's order requiring that a "change of provider be made" did not terminate Nofio's chiropractic treatment. When such an order authorizes the termination of the type of care a claimant is currently receiving—*e.g.,* chiropractic care—the claimant is entitled to a *de novo* hearing before an ALJ pursuant to section 8–43–207. *Hargett v. Director, Division of Labor,* 854 P.2d 1316, 1320 (Colo.App. 1992).

## A.

Section 8–43–207 is a general provision that authorizes evidentiary hearings for workers' compensation disputes. This statute, in part, provides:

---

11. We also granted certiorari to consider whether § 8–43–501 violates the Due Process Clauses of the United States and Colorado Constitutions.

Because I would hold that Nofio has a statutory right to a *de novo* hearing in this case, Nofio's due process challenge need not be addressed.

(1) Hearings shall be held to determine any controversy concerning any issue arising under articles 40 to 47 of this title. In connection with hearings, the director and administrative law judges are empowered to:

(a) In the name of the division, issue subpoenas for witnesses and documentary evidence which shall be served in the same manner as subpoenas in the district court;

(b) Administer oaths;

(c) Make evidentiary rulings;

(d) Limit or exclude cumulative or repetitive proof or examination;

. . . .

(h) Control the course of the hearing and the conduct of persons in the hearing room;

§ 8–43–207, 3B C.R.S. (1994 Supp.). It is clear from the language of the statute and the enumerated powers of the ALJ that section 8–43–207 was intended to provide an adversarial hearing at which testimony is heard and evidence is presented. Furthermore, the statute expressly applies to "*any controversy* concerning *any issue* arising under articles 40 to 47 of this title." *Id.* (emphasis added).

### B.

The M–U–R statute establishes a "mechanism to review and remedy services rendered pursuant to this article which may not be reasonably necessary or reasonably appropriate according to accepted professional standards." § 8–43–501(1), 3B C.R.S. (1990 Supp.). "Any insurer, self-insured employer, or claimant may request review under the provisions of" the M–U–R statute. § 8–43–501(2)(a). At the initial review stage, a claimant may only submit medical reports. § 8–43–501(2)(a).

The Director appoints three members to the Medical Utilization Review Committee to review cases brought under this statute. § 8–43–501(3)(a),(b). The scope of this Committee's power is prescribed in section 8–43–501(3)(c), which states in part:

[This committee] shall review the medical necessity and appropriateness of care provided pursuant to this article by conducting an extensive review of the medical records ... [and] shall issue a report to the director on the findings of each case reviewed. *For each case, a committee may recommend by a majority vote of such committee that no change be ordered with respect to a case or that a change of provider be ordered. A committee, by a unanimous vote, may recommend that the director order that payment for fees charged for services in the case be retroactively denied.* The director shall accept the recommendation of a committee and base the order entered pursuant to this section thereon. If the director's order specifies the payment for fees charged for services in a case be retroactively denied, the provider whose fees are so denied payment may not contract with, bill, or charge, the claimant for such fees. (emphasis added).

The M–U–R statute only empowers the Committee to order a *change* in providers and retroactively to deny payment to providers. The M–U–R statute does not authorize the Committee to *terminate* treatment. Not only is such a conclusion evident from the language of the statute, the Colorado Court of Appeals reached the same conclusion in interpreting an earlier version of the M–U–R statute.[12] *See Hargett,* 854 P.2d at 1320.

### C.

A *termination* of benefits occurs if the Director orders: (1) a cessation of the claimant's treatment entirely; (2) a cessation of a certain type of treatment, *e.g.* chiropractic care; or (3) a change in health care providers without expressly limiting such a change to a new provider within the medical discipline of the existing provider. Because the Director is not statutorily authorized to terminate the claimant's treatment entirely under the M–

12. § 8–43–501 was previously § 8–49–102, while § 8–43–207 was previously § 8–53–103. Although *Hargett* interpreted the pre–1991 version of the M–U–R statute, its interpretation and analysis are nevertheless applicable to subsequent M–U–R statutes. *See McWhorter v. CNA Ins. Co.,* 868 P.2d 1128, 1130 (Colo.App.1993).

U–R statute, the second and third situations noted above are the most likely to occur.

In *Hargett*, the Director wanted the claimant to be treated by an orthopedic physician, whereas the claimant wished to continue chiropractic treatment. *Hargett*, 854 P.2d at 1319. The court in *Hargett* thus addressed the second situation noted above and held that:

> [I]f the Director's order has terminated a particular type of benefits, *e.g.*, chiropractic care, or if a party seeks to terminate medical benefits based on the review proceedings, the party aggrieved must seek appropriate relief by requesting an evidentiary hearing under [section 8–43–207]. In such cases the ALJ will have full authority to review the matter de novo and to enter an appropriate order based on the evidence submitted.

*Id.* at 1320.

I would adopt the *Hargett* analysis and apply it to the facts of the present case to resolve the third situation noted above. In the present case, the Director ordered that "[a] change of provider be made." The M–U–R statute does not define the word "provider"; nor did the Director's order. Furthermore, the reports submitted by the three Committee members reflect the uncertainty of what type of treatment Nofio will receive in the future. Both medical doctors recommended that chiropractic care be terminated. Even the chiropractor recommended that non-chiropractic care be considered as part of Nofio's future treatment. I would therefore hold that in cases like the present case, where the Director's order is not clear as to what type of treatment the new health care provider will render, the claimant may appeal to an ALJ and receive a *de novo* hearing.[13]

#### D.

Subsection (5) of the M–U–R statute establishes the appeal process available to parties after the Director's decision is made. This subsection provides, in part, that:

> (5)(a) ... *[A] claimant,* insurer, or self insured employer *may appeal an order specifying* that no change occur with respect to a case, *that a change of provider be made,* or that the payment of fees in the case be retroactively denied *either to the director or to an administrative law judge by requesting a hearing pursuant to this article.*[14]
>
> ....
>
> (b)(III) *If a claimant,* insurer, or self-insured employer *appeals an order issued pursuant to subsection (3) of this section by requesting a hearing before an administrative law judge* according to the provisions of this article, the report of the utilization review committee upon which the director based the order pursuant to subsection (3) of this section shall be admissible in evidence, and if the report of the utilization review committee upon which the director based the order in the case under this section is supported by substantial evidence, the director's order shall not be altered by the administrative law judge.

§ 8–43–501(5), 3B C.R.S. (1990 Supp.) (emphasis added). The M–U–R statute thus allows a claimant to appeal the Director's decision to either an ALJ for a hearing or back to the Director for reconsideration. The appeal process presented by the M–U–R statute, however, applies only to orders that *change* the claimant's treatment. *Hargett*, 854 P.2d at 1320. I would hold that under the *Hargett* analysis, the Director's order in the present case includes the possibility that Nofio's chiropractic care will be terminated and replaced by some other type of treatment; therefore, Nofio is entitled to a *de novo* hearing under section 8–43–207.

The anomaly of the M–U–R statute is that it allows for the admission of evidence as well

---

**13.** Had the Director ordered "a change of provider be made within the same discipline," or "a change of chiropractors be made," I would hold that the Director *changed,* rather than terminated, the claimant's treatment.

**14.** I agree with the ICAP's final order that Nofio does not have standing to challenge the Committee's order retroactively denying payment to health care providers because the statute expressly prohibits a provider from subsequently seeking reimbursement from the claimant for services rendered. § 8–4–501(3)(c), 3B C.R.S. (1990 Supp.).

as a review based on the substantial evidence standard. In *Hargett,* the court of appeals interpreted an earlier version of the M–U–R statute and concluded that:

> Because [section 8–43–501] does not authorize a termination of medical benefits, we conclude that review to the ALJ under [section 8–43–501(5) ] is limited to a review of the record to determine whether the Director's order is supported by substantial evidence.

*Hargett,* 854 P.2d at 1320. Under the *Hargett* analysis and interpretation of the M–U–R statute, a claimant has several options available to appeal an order by the Director. First, the claimant could appeal the Director's order to the Director for reconsideration under subsection 8–43–501(5)(b)(II).[15] Second, the claimant could appeal an order that *changes* the claimant's benefits to an ALJ to review the record in order to determine whether the order was supported by substantial evidence under subsection 8–43–501(5)(b)(III). Third, the claimant could appeal an order that *terminates* the type of benefits the claimant currently receives to an ALJ for a *de novo* hearing under section 8–43–207. *See Hargett,* 854 P.2d at 1319–20. I agree with the *Hargett* court's interpretation of the M–U–R statute and would hold that only an order by the Director that clearly limits the change in health care provider to another provider in the same discipline as the current provider is subject to the substantial evidence standard of review in section 8–43–501.[16]

### E.

The majority rejects the *Hargett* analysis [17] by concluding that a change in health care providers can never constitute a termination of benefits; therefore, the type of health care provider is irrelevant to the majority's analysis. If the majority were applying the *Hargett* analysis, it would be required to determine that Nofio's future treatment would consist solely of chiropractic care. The record simply does not support such an assumption. The Director's order, and the Committee members' recommendations, leave open the possibility that Nofio's future care may not include any chiropractic care. A complete termination of chiropractic care is exactly what the *Hargett* court found to be outside the scope of the appeal process prescribed by the M–U–R statute. *Hargett,* 854 P.2d at 1320 (stating that "if the Director's order has terminated a particular type of benefits, *e.g.,* chiropractic care" it is subject to a *de novo* hearing). If Nofio's future health care provider is not a chiropractor, then *Hargett* dictates that Nofio's benefits have been "terminated" and that he is entitled to a *de novo* hearing.

The procedure for selecting a new provider under the M–U–R statute fails to ensure that Nofio's treatment will continue to consist solely of chiropractic treatment. *See* § 8–43–501(4), 3B C.R.S. (1990 Supp.). This subsection provides:

> If the director orders ... a change of provider be made in a case, the claimant ... shall have seven days from the receipt of the director's order in which to agree upon a provider. If the claimant ... cannot reach an agreement within the seven day time period, the director shall select three providers who practice in the claimant's geographical location from lists submitted by professional medical and chiropractic organizations. A new provider shall be chosen from the list established

---

**15.** In the event of an appeal to the Director, the Director appoints a new Committee to consider the case and make a recommendation either agreeing with the first Committee's recommendation or making a different recommendation. § 8–43–501(5)(b)(II), 3B C.R.S. (1990 Supp.).

**16.** As noted in the *Hargett* decision, a request by a claimant for an evidentiary hearing under § 8–43–501 should be treated the same as if it were properly brought under § 8–4–207. *Hargett,* 854 P.2d at 1320.

**17.** The majority "disapprove[s] of *Hargett* insofar as that case would authorize a de novo hearing for a claimant when a *type* of treatment is terminated." Maj. op. at 719 n. 8 (emphasis in original).

The majority also holds that a claimant has no "legitimate claim of entitlement" to receive a particular type of treatment and thus the claimant can assert no due process protection. Maj. op. at 718–719 and 719 n. 8. Because I would hold that Nofio's right to a *de novo* hearing derives from a statute, § 8–43–207, I do not address the due process issue.

pursuant to this subsection (4) by the party who was successful in the request for review. The director shall be notified of the name of the selected health care provider within seven days of the establishment of the list pursuant to this subsection (4). If the new health care provider is not selected within such seven days, the director shall select the provider who shall attend the claimant from such list.

*Id.* If Nofio and the Director are unable to agree on a new chiropractor, the Director could establish a list consisting entirely of non-chiropractor health care providers. Such a scenario undoubtedly terminates chiropractic care.

### III.

To resolve this issue, I would draw a distinction between an order that changes the claimant's health care provider and an order that terminates the type of health care provider treating the claimant. I would further hold that an order *terminating* the type of health care provider treating the claimant falls outside the scope of the M–U–R statute's appeal procedure and is thus subject to a *de novo* hearing under sections 8–43–207. A "termination" occurs when the Director's order does not clearly limit the change in providers to other providers within the same discipline as the current health care provider. Because the Director's order in the present case allows for non-chiropractic care and the record does not support the conclusion that Nofio's future treatment will consist solely of chiropractic care, the order terminated Nofio's benefits. The facts of this case, the statutory language, and the *Hargett* decision contradict the majority's conclusion that an order requiring a change of providers can never constitute a termination of benefits. For the foregoing reasons, I respectfully dissent from the majority opinion and would affirm the judgment of the court of appeals.

KIRSHBAUM and VOLLACK, JJ., join in this dissent.