STURGEON ELECTRIC and Zurich
Insurance Company,
Petitioners,

v.

INDUSTRIAL CLAIM APPEALS OF-
FICE OF the STATE OF COLORADO;
Mikel Hafner, decedent; Kathleen Haf-
ner; Marc Hafner; and John Hafner,
Respondents.

No. 04CA1062.

Colorado Court of Appeals,
Division II.

July 14, 2005.

McElroy, Deutsch, Mulvaney, & Carpen-
ter, LLP, Thomas L. Kanan, Denver, Colora-
do; Marsha A. Kitch, Evergreen, Colorado,
for Petitioners.

John W. Suthers, Attorney General, John
D. Seidel, Assistant Attorney General, Den-
ver, Colorado, for Respondent Industrial
Claim Appeals Office.

Dworkin, Chambers & Williams, P.C., Mel-
issa J. Loman Evans, C. Sandra Pyun, Den-
ver, Colorado, for Respondents Mikel Haf-
ner, Kathleen Hafner, Marc Hafner, and
John Hafner.

Opinion by: Judge TAUBMAN.

Petitioners, Sturgeon Electric and Zurich
Insurance Company (collectively Sturgeon),
seek review of a final order of the Industrial
Claim Appeals Office (Panel) determining
that the consolidated claims filed by Kath-
leen and Marc Hafner, the wife and young
son of the deceased employee, Mikel Hafner,
and John Hafner, Mikel's adult son, were

compensable. We set aside the Panel's order and remand for further proceedings.

On May 18, 2001, Mikel Hafner was driving to work from his Thornton home in his own truck with John as a passenger, when they were involved in an automobile accident. Mikel was killed, and John was injured. Mikel was a journeyman electrician and John was an apprentice electrician at the time of the accident. They were both union members employed under a collective bargaining agreement with Sturgeon at a jobsite located in Black Hawk. John sought workers' compensation benefits for his injuries and disability, while Kathleen and Marc sought death benefits.

In her initial decision, the administrative law judge (ALJ) determined that Kathleen, Marc, and John were not eligible for workers' compensation benefits because, at the time of the accident, Mikel and John were not performing services arising out of and in the course of their employment.

The ALJ found that Sturgeon paid a premium of $1.50 per hour for employees working at the Black Hawk project "to provide some incentive for electricians to travel out of the Denver metropolitan area for work in the mountains." She found that the premium was "unusual" and coincided with a "thin" labor pool. Additionally, the ALJ found that employees could use the premium as they saw fit and were not required to use it to pay their transportation expenses.

The ALJ further concluded that the employment contracts of Mikel and John with Sturgeon did not contemplate travel to and from work as part of their job functions. The ALJ then concluded that the claims were not compensable, because the travel of Mikel and John did not warrant a departure from the general "going to and coming from work rule," which provides that travel is not generally considered to be performance of services arising out of and in the course of employment. Finally, the ALJ concluded that "there was no persuasive showing that Mikel and John's commuting from Thornton to Black Hawk and back did much more for Sturgeon beyond their mere arrival at work."

Relying upon *Madden v. Mountain West Fabricators,* 977 P.2d 861 (Colo.1999), the Panel reversed the ALJ's order and remanded for further proceedings. The Panel concluded that the ALJ's finding that Mikel and John received a premium payment for travel compelled the legal conclusion that the contractual arrangement between Sturgeon on the one hand, and Mikel and John, on the other, singled travel out for special treatment so as to bring it within the course and scope of their employment.

On remand, the ALJ struck the findings and conclusions that were inconsistent with the Panel's determination that the claims of Mikel and John were compensable and awarded benefits. In particular, the ALJ deleted her initial finding that there was no persuasive showing that Mikel and John's commuting from Thornton to Black Hawk and back did much more for Sturgeon beyond their mere arrival at work. On review, the Panel affirmed.

Sturgeon contends that the Panel misapplied *Madden* in concluding that the receipt of a wage premium, without more, rendered compensable death and injuries resulting from the accident during the travel to work. We conclude that the case must be remanded for additional findings and evidence regarding the relationship between the $1.50 per hour premium and Mikel's and John's travel expenses.

In *Madden,* the supreme court addressed the going to and coming from work rule, under which injuries are generally not compensable under the Workers' Compensation Act. In setting aside a decision of a division of this court, the *Madden* court held that "the determination of whether a traveling employee's injury warrants an exception to the going to and from work rule is such a fact-specific analysis that it cannot be limited to a predetermined list of acceptable facts and circumstances." *Madden, supra,* 977 P.2d at 864. Accordingly, the *Madden* court ruled that the proper approach was to consider a number of factors to determine whether special circumstances warrant recovery under the Act. According to the *Madden* court, those factors include, but are not limited to: (1) whether the travel occurred

during working hours; (2) whether the travel occurred on or off the premises; (3) whether the travel was contemplated by the employment contract; and (4) whether the obligations or conditions of employment created a "zone of special danger" in which the injury arose.

■ Addressing the third factor, which is relevant here, the *Madden* court explained that the issue of whether travel was contemplated by the employment contract "has the potential to encompass many situations." *Madden, supra*, 977 P.2d at 864. The common link among compensable situations is that travel is a substantial part of the service provided to the employer as, for example, (a) when a particular journey is assigned or directed by the employer; (b) when the employee's travel is at the employer's express or implied request or when such travel confers a benefit on the employer beyond the sole fact of the employee's arrival at work; and (c) when travel is singled out for special treatment as an inducement to employment. The *Madden* court further noted that these examples are "not an exhaustive list of the situations when travel is found to be part of the employment contract." *Madden, supra*, 977 P.2d at 865.

Nevertheless, the *Madden* court cautioned that whether any one of the factors is sufficient, by itself, to create a special circumstance warranting recovery depends upon whether the evidence supporting that factor demonstrates a causal connection between the employment and the injury, such that the travel to and from work arises out of and in the course of employment.

Sturgeon argues that the Panel erred in concluding that an hourly premium paid as an incentive for travel to a remote job site brought Mikel's and John's travel within the scope of their employment. It contends that such an hourly premium is a fringe benefit or a form of added compensation which does not reflect either Sturgeon's assumption of responsibility for travel or a transportation allowance. We conclude that the case must be remanded for additional evidence and further findings.

The issue presented here, whether travel is singled out for special treatment as an inducement to employment when the employer pays an increased hourly premium to induce workers to travel to a particular worksite, has not been previously addressed by Colorado's appellate courts.

■ Generally, employment should be deemed to include travel when the travel itself is a substantial part of the service performed. Further, where the employer compensates travel as a special inducement to employment, the employer impliedly agrees to assume responsibility for the period of travel. *See* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 14.07[1]-[2], at 14–20 to 22 (*Larson's* ).

Compensation has been awarded in Colorado to traveling employees when the employer provided the means of transportation, fuel, or the cost of commuting to and from a jobsite. *See, e.g., Staff Adm'rs, Inc. v. Reynolds*, 977 P.2d 866 (Colo.1999)(claimant injured in accident in his own vehicle awarded compensation because he missed opportunity to rendezvous with other workers who met at service station to carpool and obtain fuel customarily paid for by owner of construction company for work at construction site located a substantial distance from claimant's home and employer's place of business); *Monolith Portland Cement v. Burak*, 772 P.2d 688 (Colo.App.1989)(death benefits awarded where employer provided employee with automobile for use in traveling to and from work for business purposes and personal use); *Loffland Bros. v. Baca*, 651 P.2d 431 (Colo.App.1982)(employee who was injured in transportation provided to and from home by driller and who was paid on a mileage basis for transporting the other employees was entitled to compensation); *see also Indus. Comm'n v. Lavach*, 165 Colo. 433, 439 P.2d 359 (1968) (scope of employment was inferentially enlarged when employer provided the means and cost of commuting to and from work).

However, when an employer pays additional compensation, either in the form of a per diem or, as here, an increased hourly premium, associated with travel to a remote location, the nexus between the increased compensation and the scope of the employment is

not always clear. As *Larson's* recognizes, "A common difficulty in this class of cases is determining whether the added compensation is indeed specifically intended for travel expenses." *Larson's, supra,* § 14.07[3], at 14–22.

As *Larson's* also recognizes, courts in other jurisdictions have not been uniform in addressing this issue. For example, some court have held that a transportation allowance is in fact nothing but a small added compensation, with no evidence that the travel is sufficiently important in itself to be regarded as part of the service performed. *See Orsinie v. Torrance,* 96 Conn. 352, 113 A. 924 (1921); *Tavel v. Bechtel Corp.,* 242 Md. 299, 219 A.2d 43 (1966)(although compensation included travel time, benefits were denied where additional payment bore no relation to actual expense, but was merely inducement to get employees to work at certain plant); *Barney v. Indus. Comm'n,* 29 Utah 2d 179, 506 P.2d 1271 (1973) (increase in hourly pay pursuant to union contract did not constitute payment for travel time or render injury compensable).

In contrast, the Montana Supreme Court has held that when compensation for transportation is singled out in the employment contract, no matter how small or how computed, the travel to and from work is brought within the course of employment. *Ellingson v. Crick Co.,* 166 Mont. 431, 533 P.2d 1100 (1975); *see also Serrano v. Indus. Comm'n,* 75 Ariz. 326, 256 P.2d 709 (1953)(payment of $1.77 as allowance for travel and subsistence, which was equal to one hour's pay, was sufficient to bring employee travel within the course and scope of employment when employees had to travel fifty-four miles from Kingman to a dam site); *Swanson v. Latham & Crane,* 92 Conn. 87, 101 A. 492 (1917); *Reneau v. Bales Elec. Co.,* 303 S.W.2d 75 (Mo.1957)(employee's accident while traveling to work held in course and scope of employment when employee was paid $3 per day as a travel expense).

Still other courts have engaged in a refined, fact-specific analysis to determine whether an additional payment for travel brought such travel within the scope of the employment relationship. For example, in *Forgach v. George Koch & Sons Co.,* 167 Mich.App. 50, 421 N.W.2d 568 (1988), the Michigan Court of Appeals held that travel allowances computed on a zoned basis could either constitute work remuneration or payment for travel. It recognized that in some instances a zone-based formula would bear so substantial a relation to the distance traveled and to the actual costs incurred that when considered together with other factors, such payment could justify a finding that an employee was in the scope of employment while traveling to or from work. On the facts before it, however, the court concluded that the travel allowance to the claimant constituted work remuneration and therefore was not within the employment relationship. The additional factors noted by the *Forgach* court were whether the injury occurred during or between working hours, whether the employer derived a special benefit from the employee's activities at the time of the injury, and whether the employment subjected the employee to excessive exposure to traffic risks.

In reaching its conclusion, the *Forgach* court relied on the holding of the New Jersey Supreme Court in *Ricciardi v. Aniero Concrete Co.,* 64 N.J. 60, 62, 312 A.2d 139, 141 (1973), where the court concluded that a travel payment could bring travel within the employment relationship if the employer reimburses the employee for "all or substantially all of the total expense involved." Anything less, the *Ricciardi* court held, would simply be noncompensable work remuneration.

We conclude that the fact-specific approach used by the courts in *Forgach* and *Ricciardi* is most consistent with the *Madden* court's mandate to employ a fact-specific inquiry. *See Madden, supra,* 977 P.2d at 865 (travel is singled out for special treatment as inducement to employment in circumstances *"such as* when the employer provides transportation or pays the cost of the employee's travel to and from work") (Emphasis added.)

 Accordingly, we conclude that this case must be remanded for the determination of additional facts that bear on whether the $1.50 per hour premium here was in the nature of noncompensable work remuneration or a travel payment that is substantially

related to the distance traveled and the actual costs incurred. In that regard, on remand, the parties should be given an opportunity to present additional evidence at a hearing before the ALJ, and the ALJ should make specific findings on the following matters:

(1) The number of miles traveled by Mikel and John from their home in Thornton to Black Hawk and back;

(2) The cost of operating a car to drive that distance on a daily basis;

(3) The extent to which the $1.50 per hour premium covered Mikel's and John's actual travel costs;

(4) The extent to which other Sturgeon employees traveled to reach the Black Hawk jobsite (for example, on the one hand, if some electricians received the $1.50 per hour premium even though they lived in Black Hawk or Central City, this would militate in favor of a finding that the additional premium payment was merely a work remuneration; on the other hand, if all electricians hired for the Black Hawk site had to travel a substantial distance, this would militate in favor of the conclusion that the $1.50 per hour premium was a travel expense associated with inducing all employees for that project to travel to Black Hawk); and

(5) Any difficulties traveling from Thornton to Denver on mountain roads that provided a special benefit to Sturgeon or posed an unusual risk to employees.

We note that the ALJ's first decision contained factual findings that could be viewed as contradictory. As noted, the ALJ determined that the $1.50 per hour premium was an inducement to get workers to travel outside the Denver metropolitan area to work in mountain towns. However, the ALJ also found that the payment of the hourly premium provided little benefit to Sturgeon beyond assuring the employees' presence at the jobsite. While we recognize that the latter finding was deleted by the ALJ in her second

decision, on remand, the ALJ should endeavor to make factual findings which would lead either to the conclusion that payment of the hourly premium served as a fringe benefit so that the travel was not within the work relationship or that it was a special inducement so as to bring the travel within the work relationship. On remand, the ALJ may otherwise reaffirm all prior findings of fact and may make any additional findings of fact deemed necessary.

Accordingly, the decision of the Panel is set aside, and the case is remanded for further proceedings consistent with this opinion, including, if requested by the parties, an additional hearing at which they may present further evidence.

Judge ROTHENBERG and Judge RUSSEL concur.