Joanne T. BENUISHIS, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OF-
FICE OF the STATE of Colorado, Chey-
enne Mountain Zoological Society, and
Pinnacol Assurance, Respondents.

No. 07CA0511.

Colorado Court of Appeals,
Div. VI.

July 24, 2008.

Certiorari Denied Nov. 24, 2008.

Steven U. Mullens P.C., Steven U. Mullens, Colorado Springs, Colorado, for Petitioner.

John W. Suthers, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claims Appeals Office.

Harvey D. Flewelling, Denver Colorado; Ruegsegger Simons Smith & Stern, LLC, Lisa A. Simons, Denver, Colorado, for Respondents Cheyenne Mountain Zoological Society and Pinnacol Assurance.

Opinion by Judge FURMAN.

Claimant, Joanne T. Benuishis, seeks review of the final order of the Industrial Claim Appeals Office (the Panel) that affirmed the administrative law judge's decision determining medical impairment based on the rating of a physician who was selected to perform a division-sponsored independent medical examination (DIME). We consider whether the opinions of that physician are those of an "independent" medical examiner within the meaning of section 8–42–107(8)(c), C.R.S.2007, and Division of Labor Workers' Compensation Rule 11–2(H), 7 Code Colo. Regs. 1101–3. Claimant challenges the physician's independence because when he performed the independent medical examination (IME), the physician had contracts with her employer's insurance company, Pinnacol Assurance, as both a provider and an advisor. We conclude that nothing in the statute or regulation limits a physician with such contracts from performing an IME absent any direct or substantial relationship with the treating physician. Because the DIME physician did not have any direct or substantial relationship with the treating physician, we affirm the Panel's order.

## I. Factual Background

While working at the Cheyenne Mountain Zoo, claimant sustained a work-related injury. The injury occurred when she fell some distance into a moat, and resulted in extensive injuries to her left side.

Claimant was treated by Thomas Eckestrand, M.D. Dr. Eckestrand placed claimant at maximum medical improvement (MMI), with a sixty-five percent whole person impairment. Respondent Pinnacol Assurance disputed Dr. Eckestrand's findings and requested an IME.

The parties selected Franklin Shih, M.D., to perform the IME. Dr. Shih reported that claimant was not at MMI, and recommended rescheduling her examination after treatment for a thumb injury was completed.

Dr. Shih examined claimant several times over the next few years. After claimant had undergone the additional treatment, Dr. Shih concluded claimant had reached MMI, with a forty percent whole person impairment. Claimant stipulated she could not overcome this rating, and eventually was awarded per-

manent partial disability benefits based on the IME physician's impairment rating.

Shortly after Dr. Shih issued his report placing claimant at MMI, claimant learned Dr. Shih was a Pinnacol SelectNet physician, meaning he was a physician in Pinnacol's insurance network, and had a contract with Pinnacol to treat insured patients at reduced fees. He was also a Pinnacol Physician Advisor, and met with Pinnacol's adjusters once a month to answer their questions about medical practices and procedures. Dr. Shih served in those roles during the time he evaluated claimant.

Claimant requested a hearing to overcome Dr. Shih's findings. At that hearing, she argued that Dr. Shih's relationship with Pinnacol created an actual or apparent conflict of interest that should have precluded him from performing the IME.

After the hearing, the administrative law judge (ALJ) found that $112,000 of Dr. Shih's $300,000 gross annual income was from Pinnacol. However, the ALJ determined claimant had not established the existence of an actual or apparent conflict of interest because Dr. Shih (1) had no personal or financial interest in claimant's case, and (2) had not discussed the case with any representative of Pinnacol.

On review, the Panel found that substantial evidence supported the ALJ's factual determinations, and affirmed the ALJ's order.

On appeal, claimant challenges the Panel's order. She contends the Panel erred in determining that substantial evidence supported the ALJ's finding that Dr. Shih had no actual or apparent conflict of interest in this case. We reject this contention.

## II. Legal Background

Procedures governing the selection of a physician to perform an independent medical examination are addressed in section 8–43–502(2), C.R.S.2007, which provides that "[i]n no instance shall the independent examining physician become the authorized treating physician," and in section 8–42–107.2, C.R.S. 2007, which provides that the "director of the division shall promulgate rules to implement the process of selecting a panel of three physicians from which the parties may select a physician to conduct a division independent medical examination." § 8–42–107.2(3)(a), C.R.S.2007.

The division's regulation governing the appointment of independent examining physicians requires such physicians to conduct the IME in an objective and impartial matter, see Rule 11–2(E), and prohibits them from evaluating a claimant if a conflict of interest exists. The regulation addresses conflicts of interest by providing that a DIME physician shall not perform an evaluation when there is the appearance of or an actual conflict of interest, explained as follows:

(H) ... [A] conflict of interest includes, but is not limited to, instances where the physician or someone in the physician's office has treated the claimant. Further, a conflict may be presumed to exist when the IME physician and a physician that previously treated the claimant has [sic] a relationship which involves a direct or substantial financial interest.

Rule 11–2(H).

## III. Actual Conflict of Interest

Claimant contends an actual conflict of interest existed, and Dr. Shih should have been disqualified from performing her IME, because he derived a significant percentage of his income from other contracts with Pinnacol. We disagree.

■ Whether a conflict of interest exists is a question of fact. See McCall v. Dist. Court, 783 P.2d 1223, 1226 (Colo.1989)(the trial court must a conduct a hearing when an attorney moves to withdraw because of a conflict of interest, and its determination as to a conflict of interest is reviewed for abuse of discretion); In re Life Ins. Trust Agreement of Seeman, 841 P.2d 403, 405 (Colo. App.1992) (approving the probate court's factual findings regarding a conflict of interest); Mohawk Data Sciences Corp. v. Indus. Comm'n, 660 P.2d 922, 923 (Colo.App. 1983)(the resolution of facts indicating a potential conflict of interest is left to the agency's fact-finding role).

■ We uphold the ALJ's factual findings in a workers' compensation case if they are

supported by substantial evidence in the record. § 8–43–308, C.R.S.2007. "Substantial evidence is that quantum of probative evidence which a rational fact-finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence." *Metro Moving & Storage Co. v. Gussert,* 914 P.2d 411, 414 (Colo.App.1995). In applying this standard, we must view the evidence as a whole and in the light most favorable to the prevailing party, deferring to the ALJ's credibility determinations and resolution of conflicting evidence. *Id.* at 415.

■ We conclude substantial evidence supports the ALJ's findings that Dr. Shih was not laboring under an actual conflict of interest when he performed claimant's IME. Dr. Shih testified that he (1) did not pay attention to the insurance carrier for a patient unless the patient needed treatment or referrals authorized; (2) had not noticed Pinnacol insured claimant's employer until he received a subpoena from claimant; (3) never discussed claimant's case with anyone associated with Pinnacol; (4) did not receive compensation, as a Pinnacol SelectNet member and Physician Advisor, that was conditioned on giving opinions favorable to Pinnacol; and (5) no longer would be a Pinnacol advisor if Pinnacol tried to dictate medical decisions to him.

Moreover, the Physician Advisor contract contained the following provision: "It is your understanding that nothing in this agreement is intended to affect, in any way, your ability to independently perform Division IMEs."

Thus, substantial evidence in the record supports the ALJ's findings. § 8–43–308; *Metro Moving & Storage Co.,* 914 P.2d at 414.

## IV. Apparent Conflict

Claimant also contends an apparent conflict of interest existed, and Dr. Shih's opinions are not those of an "independent" medical examiner within the meaning of section 8–42–107(8)(c) and Rule 11–2(H), because he had contracts with Pinnacol as a provider and an advisor. Again, we disagree.

■ We review an agency's statutory and regulatory interpretations de novo. *Ne-* *dedog v. Colo. Dep't of Health Care Policy & Fin.,* 98 P.3d 960, 962 (Colo.App.2004); *see Lobato v. Indus. Claim Appeals Office,* 105 P.3d 220, 223 (Colo.2005). Our primary task in interpreting regulations is to give effect to the intent of the enacting body. To discern that intent, we first look at the plain language of the regulation and interpret its terms in accordance with their commonly accepted meanings. *In re Estate of Moring v. Colo. Dep't of Health Care Policy & Fin.,* 24 P.3d 642, 646 (Colo.App.2001).

The regulation states the circumstances that give rise to an apparent conflict of interest, and prohibits a physician from evaluating a claimant: (1) when the IME physician or someone in that physician's office has treated the claimant; and (2) when the IME physician and a physician who previously treated the claimant have a relationship "which involves a direct or substantial financial interest." Rule 11–2(H).

The regulation defines "direct or substantial financial interest," and states that an apparent conflict of interest exists when the IME physician and the treating physician have one of the following relationships: "a business ownership interest, a creditor interest in an insolvent business, employment or prospective employment for which negotiations have begun, ownership interest in real or personal property, debtor interest or being an officer or director in a business." Rule 11–2(H)(1).

■ Hence, the statute and regulation defining conflicts of interest, and the statute governing the selection of a physician to perform an IME, do not in and of themselves prohibit a physician who is a contracted medical provider or physician advisor with an insurance company from performing an IME in a claimant's case involving that insurance company. *See* Rule 11–2(H)(1).

Claimant nonetheless contends the regulations state they are "not limited to" those instances "where the physician or someone in the physician's office has treated the claimant." She contends that, because Dr. Shih was a contracted medical provider and physician advisor for Pinnacol, an apparent conflict of interest existed, and he did not con-

duct her IME "in an objective and impartial manner" within the meaning of the regulations. However, we are not dealing with "apparent conflict" in the traditional sense of the term, but in the context of its use in the regulations. Moreover, claimant overlooks the doctrine of *noscitur a sociis,* that the meaning of an unclear phrase should be determined by the meaning of the words immediately surrounding it. *Black's Law Dictionary* 1084 (7th ed.1999). Thus, if the term "includes, but is not limited to" is understood to refer to relationships analogous to the examples surrounding it, the phrase would apply only to relationships between physicians, and would govern a relationship between the IME physician and claimant's treating physician that would prevent the IME physician from conducting the IME "in an objective and impartial manner." Rule 11–2(H); *see Rook v. Indus. Claim Appeals Office,* 111 P.3d 549, 552 (Colo.App.2005)(we may not read into a statute or regulation a provision not found in it).

Claimant's reliance on *Laskey v. S.D. Warren Co.,* 774 A.2d 358 (Me.2001), for the proposition that a doctor's work as a consultant for insurance companies creates a conflict of interest that prevents the doctor from performing an IME, is misplaced. The Maine Workers' Compensation Board Rule specifically requires the independent medical examiner to "disclose potential conflicts of interest that may result from a relationship(s) with industry [or] insurance companies" and provides that a "potential conflict of interest exists when the examiner ... receives something of value from one of these groups in the form of ... consultantship ... or payment for some other service." *Laskey,* 774 A.2d at 360–61 (quoting Me. Workers' Compensation Bd. Rule ch. 4, § 2(6)(C)).

■ However, our determination that contracts between an independent medical examiner and an insurance company do not constitute an apparent conflict of interest does not end our analysis. We must also determine whether Dr. Shih has treated claimant or whether he has a relationship with her treating physician involving a "direct or substantial financial interest." That issue presents a question of fact. Therefore, we uphold the ALJ's findings if they are supported by substantial evidence in the record. § 8–43–308. Applying that standard here, we conclude substantial evidence supports the ALJ's findings that an apparent conflict of interest did not exist, and Dr. Shih was not prohibited from evaluating claimant.

Dr. Shih testified that, as a SelectNet physician (1) he provided treatment to clients at a reduced fee, as he did routinely with other insurance carriers; (2) he did not discuss his cases with Pinnacol; and (3) he did not perform an IME on any patient who was being treated by a partner in his practice group.

Dr. Shih also testified that, as a physician advisor to Pinnacol (1) his job was to explain to adjusters medical terminology, the procedure the doctor was requesting, and why the procedure was relevant to the patient's problem; (2) this helped Pinnacol decide whether to approve certain medical procedures; and (3) his job with Pinnacol was not conditioned on his giving opinions favorable to Pinnacol or recommending denial of treatment. Thus, substantial evidence in the record supports the ALJ's findings. § 8–43–308; *Metro Moving & Storage Co.,* 914 P.2d at 414.

Alternatively, claimant contends that, as a matter of public policy, a physician who contracts to serve as a preferred medical provider with an insurance company should not be permitted to perform an IME on a patient whose employer is insured by that company. This argument involving public policy is appropriate for the legislature, not the judiciary. *See B.G.'s, Inc. v. Gross,* 23 P.3d 691, 696–97 (Colo.2001).

We need not address claimant's argument that the role of the DIME physician is quasi-judicial because it would not change our analysis of the statutory and regulatory provisions.

Because we have determined that there was no conflict of interest, we need not determine whether Dr. Shih would have had a duty to disclose to claimant his relationship with Pinnacol.

## V. Other Issues

Because we conclude that no conflict of interest existed in this case, we need not

reach the contention that the issues claimant raises in her appeal are barred by the doctrines of waiver, estoppel, or laches.

The order is affirmed.

Judge VOGT and Judge DAILEY concur.