### Dale RUFF, Petitioner,

v.

### INDUSTRIAL CLAIM APPEALS OF-FICE OF the STATE of Colorado, City of Manassa, and Pinnacol Assurance, Respondents.

#### No. 08CA0767.

Colorado Court of Appeals, Div. I.

May 14, 2009.

Rehearing Denied July 2, 2009.

---

1110

Steven U. Mullens, P.C., Steven U. Mullens, Colorado Springs, Colorado; Koncilja & Associates, P.C., Frances A. Koncilja, W. Bradley Betterton–Fike, Denver, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Harvey D. Flewelling, Denver, Colorado, for Respondents City of Manassa and Pinnacol Assurance.

Opinion by Judge LICHTENSTEIN.

In this workers' compensation proceeding, Dale Ruff (claimant), the recipient of an award of permanent partial disability (PPD) benefits, seeks review of that part of the final order issued by the Industrial Claim Appeals Office (Panel) which upheld both the denial of his request for a protective order to block a division-sponsored independent medical examination (DIME) and the exclusion of evidence offered to show the DIME physician's apparent or actual conflicts of interest. We affirm the determination that no actual conflict of interest existed, but conclude that the issue of whether an apparent conflict existed must be reconsidered. Therefore, we set aside that part of the order finding no apparent conflict of interest and remand for additional findings.

## I. Factual Background

Claimant requested the protective order after becoming aware that the physician selected to perform the DIME was a member of the SelectNet physician referral system operated by Pinnacol Assurance, the insurance carrier in this case, and received approximately twenty-five percent of his income from such referrals. The physician also provided services as a medical advisor for insurer one-half day per month.

The administrative law judge (ALJ) ruling on claimant's request for a protective order found no appearance of a conflict or an actual conflict of interest and concluded that claimant had failed to prove facts creating a substantial doubt about the DIME physician's ability to perform an impartial examination. The ALJ referred to Division of Labor Workers' Compensation Rule 11–2(H), 7 Code Colo. Regs. 1101–3 (2009), which addresses the conflict of interest issue, and concluded that the type of interest that would disqualify a DIME physician would be a direct or substantial financial interest in the outcome of the case. The ALJ found with record support that the physician's contracts with Pinnacol provide that he is to exercise his independent, professional medical judgment and none is conditioned on DIME opinions favorable to the insurer. The ALJ also found that the physician had never discussed the substance of claimant's case with anyone representing the insurer.

Following the denial of claimant's request for a protective order, claimant underwent the DIME. The DIME physician determined

that claimant had reached maximum medical improvement (MMI) from the effects of his industrial injury on December 15, 2003, and sustained a permanent impairment of twenty-two percent of the right lower extremity. Insurer filed a final admission of liability (FAL) based upon the DIME physician's rating.

Claimant contested the FAL and requested a hearing over which a different ALJ presided. Relying on the "law of the case" doctrine, the second ALJ concluded that the conflict of interest issue could not be revisited and refused to allow additional evidence of the DIME physician's alleged failure to comply with Rule 11–2(H). The ALJ instructed claimant that he could challenge the DIME physician's opinion, but not his status as the DIME physician.

The ALJ determined that claimant failed to overcome the results of the DIME by clear and convincing evidence and awarded PPD benefits based on the DIME physician's rating.

The Panel affirmed the award of benefits on review, specifically holding that both the denial of the request for the protective order and the refusal to allow additional evidence of a conflict of interest were proper.

## II. Conflict of Interest

Claimant first contends that the denial of his request for a protective order was erroneous because the DIME physician's affiliation with the insurer through SelectNet and his role as a medical advisor created a conflict of interest that disqualified the physician from conducting a DIME in this case. We disagree that the ALJ erred by finding that no actual conflict of interest existed. However, we further conclude that the first ALJ misinterpreted Rule 11–2(H) by applying an overly narrow standard to determine whether the DIME physician's relationship with Pinnacol could give rise to the appearance of a conflict of interest, and, therefore, set the order aside on that basis.

### A. Standard of Review

Although we defer to an agency's determination of facts and review its decision under an abuse of discretion standard, we review its conclusions of law de novo. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo.2004). Our de novo review extends to an agency's statutory and regulatory interpretations. *Benuishis v. Indus. Claim Appeals Office*, 195 P.3d 1142, 1145 (Colo.App.2008).

### B. Requirement of DIME Impartiality

Division of Labor Workers' Compensation Rule 11–2(E), 7 Code Colo. Regs. 1101–3, requires a DIME to be conducted "in an objective and impartial manner." Rule 11–2(H) provides that a DIME physician may "[n]ot evaluate an IME claimant if the appearance of or an actual conflict of interest exists; a conflict of interest includes but is not limited to, instances where the physician or someone in the physician's office has treated the claimant."

The Rule also states that a conflict may be presumed to exist when the "IME physician and a physician that previously treated the claimant has a relationship which involves a direct or substantial financial interest."

The Rule then states "[t] he following guidelines are to assist in determination of conflict or the appearance of a conflict":

(1) direct or substantial financial interest is a substantial interest which is a business ownership interest, a creditor interest in an insolvent business, employment or prospective employment for which negotiations have begun, ownership interest in real or personal property, debtor interest or being an officer or director in a business.

(2) The relationship should be determined at the time the IME is being requested. Relationships in existence before or after the review will have no bearing, unless a direct and substantial interest is present at the time of the IME.

(3) Being members of the same professional association, society or medical group, sharing office space or having practiced together in the past are not the types of relationships that will be considered a conflict or the appearance of a conflict absent

the present existence of a direct or substantial financial interest.

In *Benuishis*, a division of this court addressed the meaning of Rule 11–2(E) and (H) under a similar factual scenario. There, the physician was both a member of Pinnacol's insurance network and a Pinnacol Physician Advisor and earned approximately one-third of his income in those roles. The division concluded that substantial evidence supported the ALJ's findings that the physician was not laboring under an actual conflict of interest when he performed the claimant's IME. It relied on evidence that the physician had no contact with Pinnacol regarding the case, was under no obligation at any time to issue opinions favorable to Pinnacol, would refuse to serve as an advisor if he were unable to exercise his independent medical judgment, and was contractually protected from any interference with his ability to independently perform DIMEs.

The division also upheld the ALJ's findings that the physician's relationship with Pinnacol did not create the appearance of a conflict of interest. The division recognized that the two circumstances identified in the Rule as giving rise to an appearance of a conflict both concern the existence of a relationship between the DIME physician and the treating physician. The division invoked the doctrine of *noscitur a sociis* (meaning of an unclear phrase should be determined by the meaning of the words immediately surrounding it) to conclude that the phrase, "includes, but not limited to" referred only to relationships that were analogous to the physician relationships in the examples given. Therefore, the division adopted an interpretation of the Rule that disallows a medical examination based on the appearance of a conflict only in those instances where the DIME physician has a relationship with the claimant's treating physician that would prevent the physician from evaluating the claimant in an objective and impartial manner. The division found that because the DIME physician's contracts with Pinnacol did not fall within the category of relationships discussed in Rule 11–2(H), such contracts would not give rise to an apparent conflict of interest. The division similarly concluded that, because the DIME physician

had no relationship with the claimant's treating physician involving a direct or substantial financial interest, no apparent conflict could be found on that basis.

For the reasons discussed below, we disagree with the *Benuishis* division's interpretation of Rule 11–2(H).

### C. Interpretation of Rule 11–2(H)

▮ The same rules of construction used to interpret a statute should be applied to interpret a rule or regulation. Thus, if the language of the applicable rule is clear and unambiguous, we need look no further than the plain, ordinary meaning of the words and phrases contained therein. The provisions of an administrative rule should also be read together so that the rule itself may be interpreted as a whole. *Safeway, Inc. v. Indus. Claim Appeals Office*, 186 P.3d 103, 105–06 (Colo.App.2008).

▮ Further, an administrative agency's interpretation of its own regulations is generally entitled to great weight and should not be disturbed on review unless plainly erroneous or inconsistent with such regulations. *Jiminez v. Indus. Claim Appeals Office*, 51 P.3d 1090, 1093 (Colo.App.2002).

Here, Rule 11–2(H) defines "a conflict of interest" as "includes, but is not limited to, instances where the physician or someone in the physician's office has treated the claimant." Unlike the division in *Benuishis*, we regard the phrase "includes, but is not limited to" as clear and unambiguous and perceive no need to resort to special rules of construction to discern its meaning. *See Williams Natural Gas Co. v. Mesa Operating Ltd. P'ship*, 778 P.2d 309, 311 (Colo.App. 1989) (words and phrases must be construed according to their familiar and generally accepted meaning). The phrase, rather than expressing limitation, connotes expansion or enlargement and suggests that the rule be given a broader interpretation than the one adopted by the division in *Benuishis*. *See In re Forfeiture*, 432 Mich. 242, 439 N.W.2d 246, 255 (1989) (proviso "including but not limited to" embodies an illustrative listing, one purposefully capable of enlargement); *see also Bd. of County Comm'rs v. Dougherty, Daw-*

*kins, Strand & Bigelow, Inc.,* 890 P.2d 199, 207 (Colo.App.1994), *overruled on other grounds by In re Submission of Interrogatories on House Bill 99–1325,* 979 P.2d 549 (Colo.1999) (comparing word "whatsoever" to the phrase "including but not limited to," and concluding that the latter, in contrast to the former, expands the meaning of the phrase to include terms not specifically listed).

Therefore, we decline to follow *Benuishis,* and conclude that Rule 11–2(H) does not restrict the appearance of a conflict only to those scenarios where the DIME physician has a relationship with the treating physician. Reading Rule 11–2(H) narrowly, as did the division in *Benuishis,* eliminates any possibility that the appearance of a conflict can exist in situations involving a DIME physician that are not specifically enumerated. Not only is such a confined application of the rule at odds with its language, but it also undermines the general admonishment in Rule 11–2(E) that DIMEs are to be conducted in an "objective and impartial manner." Accordingly, we hold that Rule 11–2(H) contemplates and guards against the appearance of a conflict that may be present as the result of a DIME physician's relationship with an insurance carrier when that relationship involves a substantial financial interest. *See* Rule 11–2(H)(1) (delineating a "direct or substantial financial interest" as a guideline "to assist in determination of conflict or the appearance of a conflict").

### D. Application of Law to Facts

#### 1. Actual Conflict

■ As the division in *Benuishis* recognized, the existence of an actual conflict of interest is a question of fact, and the ALJ's determination in that regard must be upheld if supported by substantial evidence.

In denying the protective order, the first ALJ found no credible or persuasive evidence that the DIME physician had any direct or substantial interest in the claimant's case. Indeed, as in *Benuishis,* no evidence indicated that the DIME physician had prior contacts with or information about claimant as a result of his network participation or services as an advisor, or that he was operating under any sort of obligation to Pinnacol that would compromise or interfere with the independence of his medical judgment.

Because substantial evidence supports the ALJ's findings that no actual conflict of interest existed, we affirm that determination. *See Benuishis,* 195 P.3d at 1145 (under section 8–43–308, C.R.S.2008, and viewing evidence as a whole and in the light most favorable to the prevailing party, we may not overturn the ALJ's findings when they are supported by substantial evidence).

#### 2. Appearance of a Conflict

■ The first ALJ, who ruled on the request for the protective order prior to the *Benuishis* opinion, found that the appearance of a conflict may exist in circumstances other than those specifically listed in Rule 11–2(H). However, noting the lack of any specific direction, the ALJ concluded that the "appearance" of a conflict of interest exists if a reasonable person, knowing all the relevant facts, would harbor substantial doubts about the DIME physician's impartiality. The ALJ considered the totality of the circumstances and found that claimant had failed to meet that burden.

The standard applied by the ALJ to determine whether the factual circumstances created the appearance of a conflict of interest was appropriate and legally correct. *See People v. Schupper,* 124 P.3d 856, 858 (Colo. App.2005), *aff'd sub nom. Schupper v. People,* 157 P.3d 516 (Colo.2007) (test for appearance of partiality is whether a reasonable person, knowing all the relevant facts, would harbor doubts). Nevertheless, although the ALJ recognized the financial connection that existed between the DIME physician and Pinnacol, his inquiry concentrated solely on whether any pressures, either explicit or implicit, had been exerted to induce examinations favorable to the insurer. The inquiry did not include an assessment of the extent of the DIME physician's financial stake in his relationship with Pinnacol. However, the degree to which the DIME physician depended upon Pinnacol for his income is a necessary indicator of whether that physician's impartiality might be called into doubt in the mind of a reasonable person. *See, e.g., Schupper,*

157 P.3d at 520 (inquiry into the closeness of the relationship between a judge and a lawyer is necessary in the determination of an appearance of impropriety). Therefore, we conclude that the ALJ must consider the extent of the DIME physician's financial relationship with Pinnacol to determine whether this relationship creates the appearance of a conflict of interest. The inquiry is a factual question, and as such, must be made on a case-by-case basis. *Id.* And, although the division in *Benuishis* concluded that no appearance of a conflict existed where the physician there earned more income as a result of his activities for Pinnacol than the DIME physician here, we disagree with *Benuishis'* interpretation of Rule 11–2(H) to arrive at that result.

### III. Exclusion of Evidence

Claimant next contends that the second ALJ erred by prohibiting him from introducing additional evidence of a Rule 11–2(H) violation and by invoking the "law of the case" doctrine. We need not reach this issue because the ALJ may accept additional evidence if relevant and necessary on remand. *See Sturgeon Elec. v. Indus. Claim Appeals Office*, 129 P.3d 1057 (Colo.App.2005) (where law is clarified on appeal and case is remanded, the parties are given an opportunity, on remand, to present additional evidence at a hearing before the ALJ).

### IV. Quasi–Judicial Function

■ Claimant also contends that the performance of a DIME physician is a quasi-judicial function that requires the physician to disclose information regarding either the appearance of or an actual conflict of interest. We reject this contention.

■ An action by a governmental body or officer is quasi-judicial when it involves a determination of rights, duties, or obligations so as to adversely affect the protected interests of specific individuals, and it is reached by application of preexisting legal standards or policy considerations to past or present facts to resolve the particular interests in question. *Hellas Constr., Inc. v. Rio Blanco County*, 192 P.3d 501, 504 (Colo.App.2008).

The independent medical exam (IME) process provides a mechanism for the independent evaluation of medical issues relating to maximum medical improvement (MMI) and permanent impairment. *See Colo. AFL–CIO v. Donlon*, 914 P.2d 396, 402 (Colo.App.1995) (MMI and the degree of impairment involve matters of diagnosis). The enhanced weight given to the opinion of DIME physicians is for the purpose of discouraging litigation, *see Donlon*, 914 P.2d at 401, and the ultimate legal resolution of those issues remains the province of the ALJ and the director. *See* §§ 8–42–107(8), 8–43–207, C.R.S.2008. Therefore, the DIME physician does not function in a quasi-judicial capacity and is not subject to the same requirements for disclosure and disqualification.

The order is affirmed in part and set aside in part, and the case is remanded for reconsideration of the existence of an apparent conflict.

Judge TAUBMAN and Judge ROMÁN concur.