Vincent S. FRANZ, Petitioner,

v.

**INDUSTRIAL CLAIM APPEALS OF-FICE of the State of Colorado, Brook-harts, Inc., and Pinnacol Assurance, Re-spondents.**

No. 09CA0298.

Colorado Court of Appeals,
Div. III.

May 13, 2010.

Steven U. Mullens, P.C., Steven U. Mullens, Pattie J. Ragland, Colorado Springs, Colorado, for Petitioner.

John W. Suthers, Attorney General, A.A. Lee Hegner, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Harvey D. Flewelling, Denver, Colorado, for Respondents Brookharts, Inc. and Pinnacol Assurance.

Opinion by Judge RICHMAN.

In this workers' compensation action, claimant, Vincent S. Franz, seeks review of the final order of the Industrial Claim Appeals Office, affirming the order of the administrative law judge (ALJ) who affirmed the Director's medical utilization review (MUR) order directing a change of treating physician and found that no physicians appointed to claimant's MUR committee had any disqualifying conflicts of interest. We conclude that the review process did not violate claimant's rights to due process and that no disqualifying conflict exists under the applicable rule. Consequently, we affirm the Panel's order.

## I. Background

Claimant sustained an admitted work-related injury in 1989. In 1997, employer, Brookharts, Inc., and its insurer, Pinnacol Assurance (collectively employer), admitted claimant was permanently and totally disabled as a result of the injury.

Under the care of claimant's authorized treating physician (ATP), his medication and narcotics use increased and he was reported to be "maxed out on medication." When the ATP first examined claimant and reviewed the medical records, he diagnosed claimant with "chronic narcotic use." As he continued to treat claimant, the ATP reported that claimant's narcotics dependence and use had various detrimental physical effects and that, despite the medications, claimant remained "quite miserable," was "not doing very well," and was "quite dysfunctional."

After the ATP had treated claimant for several years, employer requested an MUR pursuant to section 8–43–501, C.R.S.2009. As stated in the statute, the purpose of the MUR, which may be requested by a claimant, employer, or insurer, is to provide a mechanism to review and remedy services rendered under the Workers' Compensation Act which may not be reasonably necessary or reasonably appropriate according to accepted professional standards. § 8–43–501(1), C.R.S.2009.

Upon receiving employer's request for an MUR and a licensed medical professional's report reviewing claimant's medical records, the Director appointed three physicians to the MUR committee and provided the parties with notice of the committee members' identities. *See* § 8–43–501(2)–(3), C.R.S. 2009.

After receiving notice of the formation of an MUR committee, claimant first moved to stay the MUR on the ground that the medical professional who performed the review had a conflict of interest due to a financial relationship with insurer. The Director determined that the medical professional had no conflict and permitted the MUR to continue.

Thereafter, claimant submitted a written objection to the members of the MUR committee itself, claiming that the physicians had conflicts because of their affiliation with insurer and SelectNet, a provider network. Despite claimant's concerns, the MUR committee proceeded to review claimant's treatment without addressing the conflict of interest question. Each committee member concluded that the ATP was severely over-

medicating claimant and recommended that claimant's medical provider be changed. Thereafter, the Director adopted the committee's recommendation and ordered claimant's medical provider changed.

After receiving the order, claimant questioned why his objection to the committee members had apparently been disregarded. The Director ordered the MUR recommendation held in abeyance until the conflict of interest issue could be resolved. He gave the parties the opportunity to submit position statements on that issue. The Director ultimately adopted the position propounded by employer that no disqualifying conflicts existed, vacated the abeyance order, and again accepted the recommendation of the MUR committee directing a change of treating physician.

Claimant sought an ALJ's review of the Director's order that claimant's medical provider be changed. The ALJ affirmed the Director's order, finding that neither the licensed medical professional who reviewed claimant's medical records nor the members of the MUR committee had a disqualifying conflict of interest and that claimant had not overcome the MUR's findings by clear and convincing evidence. The Panel affirmed the ALJ's order, and this appeal followed.

## II. Claimant's Appeal

Claimant contends that the Panel erred in affirming the ALJ's decision to uphold the MUR and change his medical provider. He first argues that his due process rights were violated because he was denied an opportunity both to conduct discovery and to present evidence to the MUR committee at a hearing before the recommendation to change his physician was entered. He also contends that the MUR committee members' associations with insurer and SelectNet created inherent conflicts of interest which should have precluded their participation in the process, but that because he was not permitted to conduct discovery into the committee members' affiliations, the extent of their alleged conflicts of interest could not be determined. We are not persuaded by either contention. He does not argue on appeal that the licensed medical professional who provided the review of the medical records had a conflict of interest, and we do not reach that issue.

## III. Applicable Law

A party may request an MUR to determine if the care provided to a claimant is "reasonably necessary" and "reasonably appropriate according to accepted professional standards." § 8–43–501(1); *see Colorado Comp. Ins. Auth. v. Nofio,* 886 P.2d 714, 716 (Colo.1994). The Director has authority to appoint members to an MUR committee, who are charged with reviewing a claimant's care and determining, by majority vote, whether a change in provider should be ordered. § 8–43–501(3)(a)–(c), C.R.S.2009; *Nofio,* 886 P.2d at 717.

No statutory provision addresses conflicts of interest applicable to an MUR committee. However, division regulations provide that within ten days of notification of the committee members' identities, a party may submit written objections based on a committee member's alleged conflict of interest. Dep't of Labor & Employment Rule 10–5(E), 7 Code Colo. Regs. 1101–3. Workers' Compensation Rule of Procedure 10–5(E) specifies that a conflict "will be presumed to exist when the provider under review and a member of the review committee have a relationship which involves a direct or substantial financial interest." *Id.* Subsections of the rule define "direct or substantial financial interest," but the rule does not otherwise delineate situations constituting a conflict of interest.

The conclusions of the MUR committee are "afforded great weight," and any party disputing the committee's recommendation must overcome its "finding[s] by clear and convincing evidence." § 8–43–501(5)(a), C.R.S.2009; *see Carlson v. Indus. Claim Appeals Office,* 950 P.2d 663, 665 (Colo.App. 1997).

## IV. Analysis

### A. Due Process Claims

Claimant contends that the MUR process violated his right to procedural due process because he was not afforded an opportunity to (1) present evidence to the MUR commit-

tee regarding the issue of changing his provider, or (2) seek evidence of conflicts of interest through discovery and present such evidence at a hearing. We disagree.

■ "The fundamental requisites of due process are notice and the opportunity to be heard." *Hendricks v. Indus. Claim Appeals Office*, 809 P.2d 1076, 1077 (Colo.App.1990). In an administrative hearing turning on questions of fact, "due process requires that the parties be apprised of all the evidence to be submitted and considered, and that they be afforded a reasonable opportunity in which to confront adverse witnesses and to present evidence and argument in support of their position." *Id.*

■■ However, a claimant's right to procedural due process is implicated only when a fundamental property interest is threatened. *See Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("The Court has consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interests."). A workers' compensation claimant does not have a property right to receive treatment from a particular provider. *Nofio*, 886 P.2d at 719 ("In order to claim a deprivation of due process, [a claimant] must establish that he [or she] has a property right either in receiving treatment from a specific medical provider or in receiving a specific type of treatment. We hold that neither interest exists."). Consequently, "absent circumstances involving retroactive denial of fees or revocation of the provider's accreditation, there is no due process right to a hearing before a change of provider may be ordered." *Rook v. Indus. Claim Appeals Office*, 111 P.3d 549, 553 (Colo.App.2005).

■ We conclude that *Rook* is dispositive of claimant's procedural due process claim. In *Rook*, the division expressly concluded that in an MUR, a claimant had no right to an evidentiary hearing before a change of provider was ordered. *Id.* Consequently, claimant's due process rights cannot have been violated by the absence of an evidentiary hearing before or after the issuance of the order changing his medical provider.

■ Claimant nonetheless argues that because the MUR process could result in "a retroactive denial of medical benefits," due process requires that a hearing be held. It is a correct statement of law that when "retroactive denial of fees or revocation of the provider's accreditation" is at issue, a party has a due process right to a hearing. *Id.* Thus, if an MUR committee recommends denial of a claimant's benefits, the claimant is entitled to a hearing. *See Nofio*, 886 P.2d at 719.

The case before us is distinguishable from this hypothetical situation because claimant was not retroactively denied treatments or benefits. The Director ordered only a change of physician, to which no due process right attaches. *See id.* Accordingly, claimant was not entitled to an evidentiary hearing. *See Rook*, 111 P.3d at 553. Based on the same analysis, we reject claimant's assertion that due process affords him the right to obtain discovery, present evidence, and argue the conflicts of interest of the MUR members.

### B.  Conflict of Interest Claims

Claimant next argues that the MUR physicians' conflicts of interest which he demonstrated should have disqualified them from serving on the MUR committee. Moreover, he asserts that (1) notwithstanding the existing division regulations, the committee members' affiliations with insurer and SelectNet should have resulted in their presumptive disqualification, and (2) he should have been permitted to conduct discovery about their affiliations and present evidence at a hearing establishing the alleged conflicts of interest. We disagree with both contentions.

■ The Workers' Compensation Rule of Procedure governing MURs specifies that the process "is not intended as an opportunity to conduct discovery. Depositions, interrogatories or any other type of discovery will not be permitted in order to make determinations as to whether a conflict exists." Dep't of Labor & Employment Rule 10–5(E)(5), 7 Code Colo. Regs. 1101–3. Claimant argues that this discovery prohibition deprives him of the opportunity to determine

if a committee member's conflict of interest should result in the member's removal.

In our view, however, knowledge of the committee members' affiliations would not have altered the outcome of this case, rendering such discovery unnecessary. Rule 10–5(E)(1) specifies that a disqualifying conflict of interest is one in which the provider under review and the committee member have a relationship involving "[d]irect or substantial financial interest," which is defined as "a business ownership interest, a creditor interest in an insolvent business, employment or prospective employment for which negotiations have begun, ownership interest in real or personal property, debtor interest or being an officer or director in a business." Dep't of Labor & Employment Rule 10–5(E)(1), 7 Code Colo. Regs. 1101–3.

Neither claimant nor the ATP, who submitted his own position statement to the Director addressing the issue of potential conflicts of interest, demonstrated that the ATP has a financial relationship with any MUR committee member that would have resulted in a committee member's disqualification under the rule. Presumably, the ATP would have known if he had such a financial relationship. Claimant does not argue that the discovery he seeks would reveal such a conflict. Rather, he contends that the committee members' potential relationship or affiliation with insurer and a provider network, SelectNet, should disqualify them from the process.

The potential conflict claimant describes is not enumerated as a disqualifying conflict by the applicable rule. *See* Dep't of Labor & Employment Rule 10–5(E). The only disqualifying conflict identified in the rule is a committee member's "substantial" financial relationship with the provider whose treatment of a claimant is under review. Consequently, discovery unearthing a physician's relationship with either an insurer or a provider network would not result in the disqualification of a physician under Rule 10–5(E).

Claimant argues that, regardless of the limited scope of disqualifying conflicts as defined in Rule 10–5(E), the relationship between an insurer and an MUR committee member could so taint the physician's view that a claimant would be unable to receive a fair and unbiased MUR. Relying on *Ruff v. Industrial Claim Appeals Office,* 218 P.3d 1109 (Colo.App.2009) (*cert. granted* Oct. 19, 2009), claimant argues that Rule 10–5(E) should be found as "suggestive of appropriate criteria for selection subject to conflict review." *Ruff* held that because Rule 11–2(H) prohibits a physician from performing a division-sponsored independent medical examination (DIME) if there is the appearance of a conflict, the rule "contemplates and guards against the appearance of a conflict that may be present as the result of a DIME physician's relationship with an insurance carrier when that relationship involves a substantial financial interest." *Ruff,* 218 P.3d at 1114. Claimant reasons that an MUR committee member should be held to the "same or similar" conflicts scrutiny as physicians conducting DIMEs governed by Rule 11–2(H).

Underlying claimant's position is the assumption that an MUR committee is equivalent to a DIME, but this assumption ignores critical differences between the processes. A DIME is generally requested to resolve a dispute between the parties regarding a claimant's condition, maximum medical improvement (MMI), or need for continuing treatment, *see* § 8–42–107(8)(b)(II), C.R.S. 2009, whereas an MUR examines only the course of treatment a claimant has already received to determine its reasonableness. *See* § 8–43–501(1). Although an MUR may result in a recommendation to change physicians, an MUR committee is not expressly authorized by statute to suspend or cease a claimant's treatment, as may occur if a DIME physician concludes a claimant has reached MMI. *See* § 8–43–501(3)(c). The MUR may, in fact, result in an increase in treatment if so recommended by the newly chosen treating physician.

More important, however, *Ruff* is factually distinguishable from the case before us because Rule 11–2(H), which was reviewed in *Ruff,* holds DIME physicians to a broader scope of conflicts of interest than Rule 10–5(E) does for MUR committee members. Dep't of Labor & Employment Rule 11–2(H),

7 Code Colo. Regs. 1101–3; *see Ruff,* 218 P.3d at 1112–13. Unlike Rule 10–5(E), which is at issue here, Rule 11–2(H) bars a physician from participation in a DIME if there is *"the appearance of* or an actual conflict of interest" and includes as disqualifying conflicts a DIME physician's financial relationship with a claimant's treating physician and a DIME physician's prior medical treatment of claimant. Dep't of Labor & Employment Rule 11–2(H) (emphasis added); *Ruff,* 218 P.3d at 1112. The "appearance" language is absent from Rule 10–5(E), and we are not at liberty to incorporate it. *See Kraus v. Artcraft Sign Co.,* 710 P.2d 480, 482 (Colo.1985) ("We have uniformly held that a court should not read nonexistent provisions into the Colorado Work[ers'] Compensation Act.").

Also absent from Rule 10–5(E) is language found in Rule 11–2(H) defining the scope of "a conflict of interest" as one which *"includes, but is not limited to,* instances where the physician or someone in the physician's office has treated the claimant." *Ruff,* 218 P.3d at 1113 (emphasis added). *Ruff* relied upon this language in holding that its inclusion made the rule "purposefully capable of enlargement," *id.* (citing *In re Forfeiture of $5,264,* 432 Mich. 242, 439 N.W.2d 246, 255 (1989)), and consequently makes the rule applicable to "the appearance of a conflict that may be present as the result of a DIME physician's relationship with an insurance carrier." *Ruff,* 218 P.3d at 1114. Unlike Rule 11–2(H), Rule 10–5(E) contains no such expansive language, and we decline to read it into the rule. *Kraus,* 710 P.2d at 482.

We note, in addition, that the Panel declined to expand the applicable rule as claimant suggests, holding that Rule 10–5(E) does not provide for such a broad reading of conflict of interest. We give deference to reasonable interpretations of a statute or rule adopted by the agency charged with its administration. *Dillard v. Indus. Claim Appeals Office,* 121 P.3d 301, 304 (Colo.App. 2005), *aff'd* 134 P.3d 407 (Colo.2006). The Panel's interpretation will therefore be set aside only "if it is inconsistent with the clear language of the statute or with the legislative intent." *Support, Inc. v. Indus. Claim Appeals Office,* 968 P.2d 174, 175 (Colo.App.

1998). We find no inconsistency in the Panel's interpretation of Rule 10–5(E) and therefore decline to set it aside.

Even if we were to accept *Ruff's* interpretation of Rule 11–2(H) as applicable to interpreting Rule 10–5(E), we note that another division of this court reached a contrary interpretation of Rule 11–2(H), *see Benuishis v. Indus. Claim Appeals Office,* 195 P.3d 1142 (Colo.App.2008), and the supreme court has not yet resolved this split among divisions. For this reason, as well, we decline to apply *Ruff* to Rule 10–5(E).

Furthermore, to the extent claimant argues that notwithstanding the Department regulation, "fundamental fairness" requires that members of an MUR not have an employment or other financial relationship with an insurer because that undermines the independence of the quasi-judicial determination of the MUR, we conclude that the MUR is not a quasi-judicial function.

In rejecting a similar argument with respect to the DIME physician, the division in *Ruff* concluded that the performance of the DIME physician is not a quasi-judicial function. 218 P.3d at 1115. As the division stated, an action is quasi-judicial when it involves a determination of rights, duties, or obligations so as to adversely affect protected property interests of specific individuals and it applies preexisting legal standards or policy considerations to facts to resolve particular interests. *Id.*

As we have stated above, the MUR process does not affect protected property rights. In addition, the MUR process, like the DIME process, does not involve the application of legal standards to facts to resolve particular interests in question. Rather, it is a records review by a panel of doctors to determine whether reasonably necessary or reasonably appropriate care for the claimant has been provided.

Accordingly, we find no error in the Panel's determination that claimant did not meet his burden of overcoming the Director's decision ordering a change in provider by clear and convincing evidence.

### V. Corrective Order

Finally, claimant contends that the ALJ's corrective order is confusing and that this case should be remanded for clarification. He offers no authority in support of this contention, relying solely on his argument that the order is inherently confusing and unclear. We find no evidence that the ALJ's alleged obfuscation detrimentally confused any party and conclude that the order is written with sufficient clarity that the parties understood its meaning. Moreover, any confusion which the order may have created was harmless, as claimant's and the ATP's position statements were submitted by the same counsel.

The order is affirmed.

Judge ROY and Judge DAILEY concur.